<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

:

**METROPOLITAN LIFE INS. CO.,**                  :

        **Plaintiff,**                  :

                         :        **Civil Action No. 13-3092 (KM)**

      **v.**                  :

:

**DEBORAH DEPALO,**                  :          **OPINION**

:

        **Defendant.**                  :

_____:

## I.    INTRODUCTION

This matter comes before the Court on the motion of Plaintiff Metropolitan Life Insurance Co. ("MetLife") to amend its Complaint.   <u>See</u> Mot. to Amend, D.E. 18.   Specifically, MetLife seeks to add two state-law causes of action against Defendant Deborah DePalo ("DePalo") for unlawful retention and conversion of funds.   The Court decided this motion without oral argument pursuant to Fed. R. Civ. 78 and L. Civ. R. 78.1.   For the reasons set forth below, MetLife's motion to amend is denied.

## II.    BACKGROUND

For purposes of the motion to amend, the Court must accept as true all well pleaded allegations in the proposed amended complaint.   <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009).

The action arises from a life insurance plan provided by Merrill Lynch & Company, Inc. ("Merrill Lynch") to eligible employees (the "Plan").   Prop. Am. Compl., D.E. 18-2 ¶ 8.   The Plan "is an employee welfare benefit plan as defined by ERISA."   <u>Id.</u> ¶ 10.   A group policy of insurance that Met Life issued to Merrill Lynch commencing March 16, 1995 (the "Group Policy")

funded the Plan.   Id. ¶ 9.   When Bank of America purchased Merrill Lynch in 2009, Bank of America replaced MetLife with Aetna as its insurance carrier.   Id. ¶¶ 13-14.   As a result, all MetLife-Merrill Lynch life insurance coverage was canceled effective December 31, 2009.   Id. ¶ 15.

Joseph DePalo, the decedent, was a Merrill Lynch employee who participated in the Plan. Id. ¶¶ 2, 11.   Pursuant to the Plan's summary plan description ("SPD"), an employee was provided a basic group life insurance benefit ("basic coverage") and could elect to obtain contributory/optional life insurance ("optional coverage").   Id. ¶¶ 18-19.   Joseph DePalo enrolled in the contributory/optional life insurance program.   Id. ¶¶ 19.   Pursuant to the Plan's terms, Joseph DePalo was eligible for $57,278.59 in basic coverage benefits and $286,394.45 in optional coverage benefits.   Id. ¶ 22.

On March 10, 2008 (before Bank of America purchased Merrill Lynch), Joseph DePalo submitted a claim form seeking to accelerate $150,000 of his life insurance benefits.   Id. ¶ 23. He was paid $28,639.45 from his basic coverage benefits and $121,360.55 in optional coverage benefits.   Id. ¶ 24.[1]

Joseph DePalo died on February 7, 2011.   Id. ¶ 25.   Joseph DePalo's wife, Defendant Deborah DePalo ("DePalo"), submitted a Claimant's Statement for his benefits.   Id.   The Claimant's Statement, signed by Deborah DePalo, contained the following provision:

> MetLife has the right to recover any amounts that it determines to be an overpayment.   An overpayment occurs if MetLife determines that (a) the total amount paid by MetLife on your claim is more than the total amount of benefits due to you under the benefit plan/insurance certificate; or (b) MetLife made payment to you

---

[1] As Deborah DePalo notes in her opposition, there appears to be a typographical error in MetLife's Proposed Amended Complaint.   MetLife states that $20,639.45, instead of $28,639.45, in basic coverage benefits were paid in 2008.   This discrepancy is not significant to the Court's analysis of the instant motion.

2

> when the payment should have been made to someone else.
> In case of an overpayment, I agree to repay MetLife the specifically
> overpaid funds.   I further understand that if an overpayment is not
> repaid, MetLife reserves the right to rely on any means to recover
> the overpayment, including institution of litigation.

Id. ¶ 26.

On March 28, 2011, MetLife paid Deborah DePalo $28,639.44 in basic coverage benefits

and $165,033.90 in optional coverage benefits (plus interest).   Id. ¶ 28.[2]   Deborah DePalo

disputed this payment, arguing that she was due benefits from both Merrill Lynch and Bank of

America.   Id. ¶¶ 29-31.

On or around September 2, 2011, the Plan's record-keeper contacted MetLife, advising

MetLife that the optional coverage benefits were not MetLife's obligation, but instead were

Aetna's liability.   Id. ¶ 33.   MetLife then contacted Aetna and Aetna advised MetLife that Aetna

should have paid the Decedent's optional coverage benefits.   Id. ¶¶ 34-36.   Aetna sent a letter to

Deborah DePalo requesting that DePalo consent to Aetna reimbursing MetLife for MetLife's

improper payment.   Id. ¶ 36.   When Deborah DePalo refused, Aetna "had no alternative" but to

also pay her $165,033.90 in optional coverage benefits (plus interest).   Id. ¶ 37.   Thereafter,

MetLife contacted Deborah DePalo and requested that she refund MetLife's payment of optional

coverage benefits, but DePalo refused.   Id. ¶¶ 38-40.

MetLife does not dispute that it remained liable for Joseph DePalo's basic coverage

benefits.   Instead, MetLife argues that the Plan's SPD provided that "[optional] insurance

provided under this section will end at the earliest of: . . . (9) the date the Group Policy ends" and

coverage was canceled on December 31, 2009.   Id. ¶¶ 15, 21.   MetLife asserts that "[t]hrough

---

[2] These amounts constitute the total amount of basic coverage benefits and optional
coverage benefits minus the $150,000 accelerated payment.

inadvertence, the termination of the Decedent's contributory/optional life insurance under [the Plan] was not recognized when DePalo was paid benefits.   Accordingly, MetLife was mistaken when it paid DePalo $165,033.90[.]"   Id. ¶¶ 41-42.

MetLife filed suit on May 15, 2013, seeking monetary and equitable relief under the Employee Retirement Income Security Act of 1974 ("ERISA") for, *inter alia*, unjust enrichment. See Compl., D.E. 1.   MetLife now seeks to file a First Amended Complaint that would add state-law claims for unlawful retention and conversion.   See Mot. to Amend, D.E. 18.

**III.   ANALYSIS**

**1.   Federal Rule of Civil Procedure 15(a)**

"The threshold issue in resolving a motion to amend is the determination of whether the motion is governed by Rule 15 or Rule 16 of the Federal Rules of Civil Procedure."   Karlo v. Pittsburgh Glass Works, LLC, No. 10-1283, 2011 WL 5170445, at *2 (W.D. Pa. Oct. 31, 2011). Rule 15 states, in pertinent part, that "a party may amend its pleading only with the opposing party's written consent or the court's leave.   The court should freely give leave when justice so requires."   Fed. R. Civ. P. 15(a)(2).   "Rule 16, on the other hand, requires a party to demonstrate 'good cause' prior to the Court amending its scheduling order."   Karlo, 2011 WL 5170445, at *2 (citing Fed. R. Civ. P. 16(b)(4)).   There is "tension" between the standards of the two Rules, which the Third Circuit Court of Appeals has not resolved directly.   Id. at *2 n.3 (citing Assadourian v. Harb, 430 Fed. App'x 79 (3d Cir. 2011)).   However, Third Circuit courts "have consistently reached the same conclusion:   a party seeking to amend the pleadings *after the deadline set by the Court* must satisfy the requirements of Rule 16(b)(4) – i.e., they must show 'good cause.'"   Id. (citations omitted).   Therefore, if a party has filed a motion to amend "after the deadline set by the Court, the movant must satisfy the [good cause standard] of Rule 16 before the

4

Court will turn to Rule 15." Id. at *2.

Here, the Court ordered that any motion to amend the pleadings must be filed by February 28, 2014. See October 21, 2013 Pretrial Scheduling Order, D.E. 15, ¶ 12. As MetLife filed its motion on February 28, 2014, the more liberal Rule 15 standard, rather than the Rule 16(b)(4) "good cause" standard, governs its application.

Rule 15(a) provides that leave to amend a pleading shall be freely given "when justice so requires." The Court may deny leave to amend the pleadings only where there is (1) undue delay, (2) bad faith or dilatory motive, (3) undue prejudice, (4) repeated failures to cure deficiencies, or (5) futility of amendment. Foman v. Davis, 371 U.S. 178, 182 (1962); Long v. Wilson, 393 F.3d 390, 400 (3d Cir. 2004) ("We have held that motions to amend pleadings [under Rule 15(a)] should be liberally granted.") (citations omitted); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) ("Under Rule 15(a), if a plaintiff requests leave to amend a complaint . . . such leave must be granted in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment.").

In this case, Deborah DePalo argues that the Court should deny MetLife's motion for leave to file a First Amended Complaint because of the futility of the proposed amendment. Specifically, Deborah DePalo asserts that MetLife's proposed Fourth and Fifth Causes of Action are futile because: (1) they are conflict preempted by ERISA; and (2) regardless of preemption, both causes of action are legally deficient. See Def. Opp'n Br., D.E. 21; see also Hill v. City of Scranton, 411 F.3d 118, 134 (3d Cir. 2005) (establishing that "it would have been futile to allow [plaintiff] to amend his complaint because his allegations before the District Court did not state a claim on which he could have obtained relief."). Because Deborah DePalo does not argue that there is undue delay, bad faith, undue prejudice, or that MetLife has failed repeatedly to cure

deficiencies, the Court bases its determination on whether to grant MetLife's motion to amend solely on whether it would be futile to allow MetLife's proposed new counts to proceed.

A court will consider an amendment futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." Harrison Beverage Co. v. Dribeck Imps., Inc., 133 F.R.D. 463, 468 (D.N.J. 1990) (citations omitted) (internal quotations marks omitted).   To determine whether an amendment is insufficient on its face, the Court employs the standard applied to Rule 12(b)(6) motions to dismiss.   In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).   Under this standard, the question before the Court is not whether the movant will ultimately prevail, but whether the complaint sets forth "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (establishing that a "court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."); Harrison Beverage, 133 F.R.D. at 468 ("'Futility' of amendment is shown when the claim or defense is not accompanied by a showing of plausibility sufficient to present a triable issue.").   A two-part analysis determines whether this standard is met.   Fowler, 578 F.3d at 210 (citing Ashcroft v. Iqbal, 556 U.S. 662, 629 (2009)).

First, a court separates the factual and legal elements of a claim.   Fowler, 578 F.3d at 210. All well-pleaded facts set forth in the pleading and the contents of the documents incorporated therein must be accepted as true, but the Court may disregard legal conclusions.   Id. at 210–11; West Penn Allegheny Health Sys., Inc. v. UPMC, 627 F.3d 85, 97 n.6 (3rd Cir. 2010); see also Iqbal, 556 U.S. at 678 (noting that a complaint is insufficient if it offers "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertions" devoid of "further factual enhancement") (alterations omitted) (internal quotations marks omitted).

6

Second, as stated above, a court determines whether the plaintiff's facts are sufficient "to state a claim to relief that is plausible on its face."   Twombly, 550 U.S. at 570; accord Fowler, 578 F.3d at 211.   As the Supreme Court instructed in Iqbal, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   556 U.S. at 678.   The plausibility standard is not a "probability requirement," but the well-pleaded facts must do more than demonstrate that the conduct is "merely consistent" with liability so as to "permit the court to infer more than the mere possibility of misconduct."   Id. at 678–79 (citations omitted) (internal quotation marks omitted). This "context-specific task . . . requires the reviewing court to draw on its judicial experience and common sense."   Id. at 679.

Further, a court may consider only a limited record when evaluating whether a proposed amendment is futile.   Specifically, a court may consider only the proposed pleading, exhibits attached to that pleading, matters of public record, and undisputedly authentic documents provided the claims are based on those documents.   Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993); accord West Penn, 627 F.3d at 97 n.6 (reiterating the rule and its limited exception for documents that are "integral to or explicitly relied upon in the complaint.").

## 2. ERISA Preemption

In its initial Complaint, MetLife brought claims against Deborah DePalo under ERISA. See Compl., D.E. 1.   MetLife's proposed Amended Complaint also contains ERISA claims, but seeks to plead in the alternative two state law claims for unlawful retention and conversion.   See Pl. Br., D.E. 18, at 1.   MetLife asserts that because "the benefits in dispute have already been paid, and the Group Policy terminated prior to the accrual of this action, the action may be governed by

7

state law and not ERISA."   Id. at 7.

In opposition, Deborah DePalo asserts that MetLife's state law claims are conflict preempted pursuant to ERISA's Section 514(a) because these claims "relate to" an ERISA plan and seek to create remedies that arise from that plan.   Def. Opp'n Br., D.E. 21, at 8, 10.   Deborah DePalo asserts that, as the issue before the Court in this case will be "whether [MetLife] properly paid benefits under the terms of the Merrill Lynch Plan or whether it overpaid benefits" and claims involving "the calculation and payment of the benefit due" are conflict preempted, these claims must be dismissed.   Id. at 11.

MetLife argues in its reply that the Third Circuit has held ERISA does not apply to plan benefits after the benefits are paid.   Pl. Reply Br., D.E. 23, at 5.   MetLife asserts that the cases Deborah DePalo cites are either: (1) irrelevant as they do not address claims relating to benefits that have been paid; or (2) non-binding decisions from other circuits that conflict with Third Circuit precedent.   Id. at 7.

Section 514(a) of ERISA provides:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

29 U.S.C. § 1144(a).   When interpreting this preemption clause, the Supreme Court has stated:

> The pre-emption clause is conspicuous for its breadth. Its deliberately expansive language was designed to establish pension plan regulation as exclusively a federal concern. The key to § 514(a) is found in the words "relate to." Congress used those words in their broad sense, rejecting more limited pre-emption language that would have made the clause applicable only to state laws relating to the specific subjects covered by ERISA.   Moreover, to underscore its intent that § 514(a) be expansively applied, Congress used equally broad language in defining the "State law" that would be pre-empted. Such laws include "all laws, decisions, rules,

regulations, or other State action having the effect of law." §
514(c)(1), 29 U.S.C. § 1144(c)(1).

Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 138-39 (1990) (internal citations and quotations

omitted); see also Nat'l Sec. Sys., Inc. v. Iola, 700 F.3d 65, 82 (3d Cir. 2012) ("ERISA possesses

extraordinary pre-emptive power.") (quotation omitted).   While the term "relate to" is expansive,

the Supreme Court has noted its scope "cannot 'extend to the further stretch of indeterminacy';

otherwise, 'for all practical purposes pre-emption would never run its course.'"   Iola, 700 F.3d at

83 (quoting N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514

U.S. 645, 655 (1995)).

"The test for whether a state law cause of action 'relates to' an employee benefit plan is

whether 'it has a connection with or reference to such a plan.'"   Id.   The Third Circuit has

recognized that the "connection with" language of this test "supplies scarcely more content than

the 'relates to' formulation."   Id. at 83-84.   Therefore, a court must look to ERISA's objectives

and the impact that the state law would have on ERISA plans to determine if Section 514 preempts

the state claim.   Id.; see also Kollman v. Hewitt Assocs., 487 F.3d 139, 147-48 (3d Cir. 2007)

(instructing that because the Supreme Court has not articulated a generally applicable rule to

determine preemption in different fact circumstances, Section 514(a) must be interpreted in light

of the purposes behind the statute and applicable precedent).

In Kollman, the Third Circuit addressed whether Section 514(a) preempted a plan

participant's malpractice claim against a non-fiduciary plan administrator.   See 487 F.3d at 143.

In analyzing the issue, the Third Circuit examined the Supreme Court's decision in

Ingersoll-Rand, in which the Supreme Court considered whether ERISA preempted an employee's

wrongful discharge claim against his employer, which was predicated upon the employee's

assertion that the employer terminated him to avoid contributing to the employee's ERISA pension

plan.   In that case, the Supreme Court noted Congress had clearly expressed its intent that Section 514 be "expansively applied."   Id. at 148 (citing Ingersoll-Rand, 498 U.S. at 138-39).   The Supreme Court reasoned that allowing the cause of action to proceed would subject plans and plan sponsors to additional burdens, and facilitate state courts articulating differing substantive standards to the same employer conduct, which would force plans to be tailored to the "peculiarities of each jurisdiction."   Id. (citing Ingersoll-Rand, 498 U.S. at 142).   Accordingly, the employee's wrongful-discharge claim was preempted.   Id. (citing Ingersoll-Rand, 498 U.S. at 142); see also Ingersoll-Rand, 498 U.S. at 139-40 ("Here, the existence of a pension plan is a critical factor in establishing liability under the State's wrongful discharge law.   As a result, this cause of action relates not merely to pension benefits, but to the essence of the pension plan itself.").

Turning to the claims before it, the Kollman Court recognized that plaintiff's claims were not brought against an employer or the plan administrator, but instead against a non-fiduciary agent that performed administrative duties for and on behalf of ERISA plans.   487 F.3d at 143. Specifically, Kollman sought to recover damages from Hewitt Associates for miscalculating his retirement benefits.   Id. at 141.   The Third Circuit concluded that allowing the claims to proceed would "subject such companies to the differing state court interpretations of the tort of professional malpractice[, which] would create obstacles to the uniformity of plan administration that was and is one of ERISA's goals."   Id. at 148.   The Third Circuit recognized that it had previously held ERISA did not preempt a malpractice claim brought by a plan trustee against the plan's accountant or auditor for a failure to discover fraudulent activity.   Id. (citing Painters of Phila Dist. Council No. 21 Welfare Fund v. Price Waterhouse, 879 F.2d 1146 (3d Cir. 1989)). The Kollman Court reasoned that a malpractice claim brought by a plan administrator against an

accountant or auditor was distinguishable from a malpractice claim brought by an employee

because the plan administrator's malpractice claim would not "interfere" with plan administration.

Id.   The Kollman Court explained:

> A claim by the plan that an agent negligently acted in some way
> causing injury to the plan does not implicate the funding, benefits,
> reporting or administration of an ERISA plan. Instead, the purpose
> of the ERISA preemption is to eliminate claims that would interfere
> with the ERISA plans.
>
> . . . .
>
> In contrast, the claim that Kollman asserts against Hewitt **goes to
> the essence of the function of an ERISA plan-the calculation
> and payment of the benefit due to a plan participant.** As the
> District Court recognized, "[i]n order to determine whether [the
> calculation] error constituted malpractice, [the] Court would
> necessarily need to consult the Plan to determine such issues as
> whether the calculation was in error, whether the Plan includes
> provisions regarding the representations of Lump Sum Payout
> amounts made on the Website or by [Hewitt's] customer service
> personnel, and whether the Plan includes provisions regarding
> representations of Lump Sum Payout amounts before claims for
> benefits are actually submitted."

Id. at 149-50 (citation omitted) (emphasis added).

Subsequently, in Iola, the Third Circuit addressed whether Section 514(a) preempted fraud,

breach of fiduciary duty, breach of contract, breach of the implied duty of good faith and fair

dealing, and conspiracy/aiding and abetting claims brought by employers against Barrett, a

non-fiduciary financial planner.   700 F.3d at 76-77.   Barrett had advised the plaintiffs to invest in

certain ERISA welfare benefit plans and claimed these investments entitled the employers to

certain tax deductions.   Id.   The IRS, however, disagreed, disallowed most of the deductions, and

imposed fees and taxes or penalties against the corporate employers.   Id.

The Third Circuit drew a distinction between claims against Barrett for conduct occurring

before and after the plans were adopted.   The Third Circuit held any claims arising from Barrett's

11

misrepresentations occurring after the plans were adopted were preempted:

> To prevail on those claims, the plaintiffs would have had to plead, and the court to find, that the plans were in fact adopted.   The court would then be called on to assess Barrett's representations in light of the plaintiffs' benefits and rights under the plans. This type of analysis—concerning the accuracy of statements made by an alleged (state law) fiduciary to plan participants in the course of administering the plans—sits within the heartland of ERISA.

Id. at 84.[3]   On the other hand, claims resting on misrepresentations made before the plans were

---

[3]   The Third Circuit recently reaffirmed this principle in Menkes v. Prudential Ins. Co. of America, No. 13-1408, 2014 U.S. App. LEXIS 15113 (3d Cir. Aug. 6, 2014), which counsel brought to the Court's attention by letter filed on August 12, 2014.   Letter, Aug. 12, 2014, D.E. 27.   In Menkes, the Third Circuit addressed the application of ERISA preemption to state-law claims.   Id.   In that case, the plaintiffs were employed by a defense contractor, Qinetiq, to work in a military base in Kirkuk, Iraq.   Id. at *2.   As part of their employee benefits, plaintiffs were automatically enrolled in a basic life insurance and disability coverage plan pursuant to a contract between Qinetiq and Prudential Insurance Company of North America ("Prudential").   Id.   The plaintiffs also purchased supplemental insurance coverage from Prudential.   Id. at *3.   The Prudential policies excluded coverage for losses suffered due to acts of war.   Id. at 5.   However, the plaintiffs had separate coverage for such injuries through a policy that Qinetiq had purchased for them, pursuant to the Defense Base Act, 42 U.S.C. § 1651, from the Insurance Company of the State of Pennsylvania.   Id.

Plaintiff Menkes filed a claim for long-term disability coverage for various injuries that he sustained in Iraq.   After Prudential denied the claim, plaintiffs brought suit in the District of New Jersey alleging various state-law claims.   Id. at *6-7.   Plaintiffs claimed that Prudential "fraudulently induced them to buy the supplemental insurance coverage knowing that any claim they filed would likely be subject to the war exclusion clauses because their place of employment was in a war zone in Iraq, rendering the supplemental insurance coverage effectively worthless." Id. at *8.

The District Court dismissed plaintiffs' claims after finding that the express preemption provision of ERISA, § 514(a), as well as § 502(a), preempted them.   Id. at *8.   The Third Circuit affirmed the District Court.   The Third Circuit first rejected the plaintiffs' contention that the District Court erred in not "unbundl[ing]" the supplemental coverage from the basic policies, and not finding that the safe harbor provision of 29 C.F.R. § 2510.3-1(j) exempted the supplemental coverage from ERISA.   Id. at *14.   The Third Circuit observed that the basic policies and supplemental coverage "were governed by a single group contract between Qinetiq and Prudential[,]" and shared the same booklets and summary plan descriptions.   Id. at *15. Therefore, the Third Circuit found that the basic policies and supplemental coverage were "two parts of one broader benefits plan" and "that the Supplemental Coverage cannot be unbundled from the Basic Plans."   Id. at *15-16.   The Third Circuit thus held that the supplemental coverage

adopted were not preempted.   The Third Circuit explained:

> [Pre-adoption claims] are not premised on a challenge to the actual administration of the plan. To the extent that a reviewing court would need to examine the provisions of the plan in considering the claims, it would be only to determine whether the representations made by Barrett regarding plan structure and benefits were at odds with the plan itself, or with the plaintiffs' understanding of the benefits afforded by the plans. This is not the sort of exacting, tedious, or duplicative inquiry that the preemption doctrine is intended to bar. To the contrary, that comparison requires only a cursory examination of the plan provisions and turns largely on legal duties generated outside the ERISA context. Nor do we think these claims strike at that area of core ERISA concern—funding, benefits, reporting, and administration—in which the use of state, rather than federal, law threatens to undermine the goals of Congress in enacting ERISA in the first place.

Id. at 85 (internal citations and quotations omitted).

    While Deborah DePalo does not cite to any decisions within this District that hold an

---

was not subject to the safe harbor of 29 C.F.R. § 2510.3-1(j), and instead was governed by ERISA. Id. at *19-20.

    The Third Circuit next concluded that the broad language of § 514(a) preempted plaintiffs' state law claims.   The Third Circuit noted the expansive interpretation that Supreme Court precedent and 29 U.S.C. § 1144(c)(1) had afforded the "relate to" provision of § 514(a).   Id. at *20-21 (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97 (1983); Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47-48; and 29 U.S.C. § 1144(c)(1)).   The Third Circuit concluded that the state law claims related to the ERISA plan because the trial court, to assess the claims, would have to compare the defendants' alleged representations with the plan provisions to determine whether, and to what extent, the defendants had misrepresented the parties' rights under the plan.   Id. at *24.   The Third Circuit held that analysis "'concerning the accuracy of statements . . . to plan participants in the course of administering the plans – sits within the heartland of ERISA,' and ERISA expressly preempts these claims."   Id. at *26 (quoting Iola, 700 F.3d at 84).   The Third Circuit similarly rejected plaintiffs' contention that their state-law claims did not derive from the ERISA plan, but instead turned on the allegation that Prudential had an unstated practice of "automatically denying claims based on the war exclusion clauses even in situations where the exclusions should not apply."   Id. at *26-27.   The Third Circuit found that argument to be another iteration of the allegation that Prudential "was consistently making improper benefit determinations."   Id. at *27.   The Third Circuit found that analysis would still require the trial court to examine the ERISA plan to determine the scope of each policy, and to review the insurer's claims administration practices, and thus found the claim was expressly preempted by ERISA. Id.

insurer's state law claims for reimbursement of an overpayment made to a beneficiary are preempted, other courts within the District have stated ERISA preemption would apply in related circumstances.

In Our Lady of Lourdes Health Sys. v. MHI Hotels, Inc. Health and Welfare Fund, the court held that a medical provider's breach-of-contract claims against a plan were preempted under Section 514(a) because the providers could not have brought suit if an ERISA plan did not exist, and the court would need to examine the plan to resolve the dispute over the calculation and payment of benefits.   No. 09-1875, 2009 U.S. Dist. LEXIS 111875, at *11-12 (D.N.J. Dec. 1, 2009); see also St. Peter's Univ. Hosp. v. N.J. Bldg. Laborers Statewide Welfare Fund, 431 N.J. Super. 446, 456 (App. Div. 2013) ("A state law claim relates to an employee benefit plan if 'the existence of an ERISA plan [is] a critical factor in establishing liability" and 'the trial court's inquiry would be directed to the plan[.]'") (quoting 1975 Salaried Ret. Plan for Eligible Emps. of Crucible, Inc. v. Nobers, 968 F.2d 401, 406 (3d Cir. 1992), cert. denied, 506 U.S. 1086 (1993)).

In Rowello v. Healthcare Benefits, Inc., a deceased employee's widow brought suit against her husband's employer and his life insurance provider for alleged life insurance payments due to her husband.   No. 12-4326, 2013 U.S. Dist. LEXIS 152631, at *3-4 (D.N.J. Oct. 23, 2013). While plaintiff brought an ERISA claim against the insurer for denial of benefits, she also sought to bring state negligence and breach-of-contract claims against the employer for failing to enroll her husband in an optional life-insurance program.   Id. at *4.   Plaintiff claimed the state-law claims were brought in the alternative based upon the possibility that her husband never participated in the plan due to the employer's actions.   Id. at *14.   The court concluded that these claims were preempted because "[r]egardless of whether Plaintiff is entitled to the . . . additional insurance, the plan exists" and plaintiff was improperly seeking an "alternative enforcement

14

mechanism" for its ERISA claim against the insurer.   Id. at *15-16 (citing Pane v. RCA Corp., 868 F.2d 631, 634-35 (3d Cir. 1989)).   In reaching this decision, the Rowello Court recognized that dismissal of plaintiff's claims would leave plaintiff without a remedy against the employer if no insurance coverage was found to exist.   Id. at *17.   The court stated, "[w]hile the Court sympathizes with Plaintiff's position, the Court must adhere to the rule that 'the availability of a federal remedy is not a prerequisite for federal preemption.'"   Id. (quoting Bernatowicz v. Colgate-Palmolive Co., 785 F. Supp. 488, 494 (D.N.J. 1992)); see also ING Invs. Plan Servs., LLC v. Solberg, No. 09-1517, 2010 WL 582347, at *3 (D. Colo. Feb. 16, 2010) ("If ERISA preempts state remedies in this case, and [the administrator] does not have standing under ERISA, then this would mean that [the administrator] could not pursue the claims, not that ERISA does not apply."). See also Premier Health Ctr., P.C. v. UnitedHealth Grp., 292 F.R.D. 204, 223 (D.N.J. 2013) (stating, in context of class certification, that insurer's claim to recover overpayments paid to medical services provider "would undoubtedly require a court to analyze the terms of the plan").

The Court also recognizes that a number of courts outside of this District have held that § 514(a) preempts state-law claims for the recovery of overpaid benefits.   See ING Inves. Plan Servs., LLC v. Barrington, No. 09-3788, 2010 WL 3385531, at *2 (N.D. Ill. Aug. 24, 2010) (plan administrator's state law claims for quantum meruit and money had and received were preempted because any determination of overpayment and the plan's and administrator's rights to pursue a claim "will necessarily require consulting the terms of the Plan itself"); Bd. of Trustees for Hampton Roads Shipping Assoc. – Int'l Longshoremen's Assoc. v. Stokley, 618 F. Supp. 2d 546, 553 (E.D. Va. 2009) (plan administrator's state-law breach-of-contract claim against employee for repayment of paid benefits was preempted); Sheakalee v. Fortis Benefits Ins. Co., No. 08-416, 2008 U.S. Dist. LEXIS 82553, at *6-7 (E.D. Cal. Sept. 15, 2008) (insurer's state law counterclaims

15

against participant for recovery of alleged overpayments were preempted by ERISA); see also

Autonation, Inc. v. United Healthcare Ins. Co., 423 F. Supp. 2d 1265, 1270 (S.D. Fla. 2006)

(employer's claim against plan administrator for overpayment of benefits was preempted because

the Court would have to interpret the plan to determine whether the payment amount was

incorrect);[4] Express Oil Change, LLC v. ANB Ins. Servs., Inc., 933 F. Supp. 2d 1313, 1336-37

(N.D. Ala. 2013) (same); cf. Whitworth Bros. Storage Co. v. Central States, Southeast and

Southwest Areas Pension Fund, 794 F.2d 221, 234 (6th Cir. 1986) (finding subject matter

jurisdiction over employer's claim for recovery of overpayments made to defendant plan);[5]

Solberg, 2010 WL 582347, at *3 (noting that if defendant-participant disputes the existence or

amount of overpayment, plan administrator's state-law claims would be preempted).

　　　　MetLife argues that caselaw within the Third Circuit and this District establish that ERISA

never applies to claims over benefits that have been paid to the beneficiaries.   The two Third

---

[4] "[Here,] Plaintiffs are essentially arguing the inverse of a typical ERISA claim—instead of a beneficiary suing for underpayment of benefits, the employer is suing for overpayment of benefits. There is no dispute that courts have consistently held that state law claims brought by individual beneficiaries (often employees) that essentially seek to recover improperly denied benefits are preempted by ERISA because these state law claims 'relate to' an ERISA plan.   It strains logic for the Court to hold that state law claims of an employer suing for improper payments of benefits under a health plan are not sufficiently 'related to' an ERISA plan and are not preempted by ERISA."   Autonation, Inc., 423 F. Supp. 2d at 1270 (internal citation omitted).

[5] "In this case, Whitworth's claim is that both plaintiff and defendant Central States are parties to, and are bound by the terms of, the trust agreement and the provisions of the collective bargaining agreement incorporated therein. Whitworth claims to have made payments to Central States in excess of Whitworth's contractual obligations, and claims that, in light of those specifically delineated obligations, equity requires the refund of overpayments. Consideration of this claim inevitably requires interpretation of the documents executed by the parties and the provisions made therein for payment and refund of contributions. It is uncontested that the benefit plan in question is covered by ERISA, and it is likewise clear that Whitworth's claim 'relates to' such plan. Accordingly, it is clear that federal, and not state, law applies to Whitworth's claim based on the contracts between the parties. This conclusion is buttressed by judicial interpretation of the legislative history and ERISA's preemption provision."   Whitworth Bros. Storage Co., 794 F.2d at 234.

Circuit opinions MetLife cites, however, are inapposite because they involve the application of ERISA's anti-alienation provision, not Section 514(a).   See Trucking Emps. of North Jersey Welfare Fund v. Colville, 16 F.3d 52 (3d Cir. 1994) and Estate of Kensinger v. URL Pharma, Inc., 674 F.3d 131 (3d Cir. 2012).   MetLife does cite to a line of cases within this District in which courts have held that a state-law claim is not expressly preempted if the claim only "requires a cursory examination of ERISA plan provisions" or when the ERISA plan is merely the context in which a state-law cause of action arises.   See Horizon Blue Cross Blue Shield of N.J. v. Transitions Recovery Program, No. 10-3197, 2011 WL 2413173, at *8 (D.N.J. June 10, 2011) (citing Trustees of AFTRA Health Fund v. Biondi, 303 F.3d 765, 780 (7th Cir. 2002)); see also Horizon Blue Cross Blue Shield of N.J. v. East Brunswick Surgery Ctr., 623 F. Supp. 2d 568 (D.N.J. 2009); Assoc. of N.J. Chiropractors v. Aetna, Inc., No. 09-3761, 2012 WL 1638166, at *9 (D.N.J. May 8, 2012); Mass. Mut. Life Ins. Co. v. Marinari, No. 07-2473, 2009 WL 5171862, at *8 (D.N.J. Dec. 29, 2009).   However, those decisions are distinguishable because the underlying claims in those cases involved fraudulent conduct or other improper misrepresentations. Consequently, the court's focus in each case was on the defendants' conduct, not the plan's terms. Moreover, contrary to MetLife's argument, the courts in these cases recognized that a dispute premised upon a plan's existence that required an interpretation of a plan's terms would be preempted.   Marinari, 2009 WL 5171862, at *7 ("A state law cause of action is expressly preempted by ERISA where a party, in order to prevail, must prove the existence of, or specific terms of, an ERISA plan."); Transitions Recovery, 2011 WL 2413173, at *9 ("This case does not involve a plan beneficiary suing a plan administrator for the improper denial of benefits, or a plan administrator suing a plan beneficiary to recoup improperly paid benefits based on allegedly false statements."); see also East Brunswick Surgery, 623 F. Supp. 2d at 578 ("Plaintiff's state law

17

claims do not seek to recover benefits, obtain declaratory judgment that a plan participant is entitled to benefits, or enjoin an improper refusal to pay benefits, claims traditionally subsumed by ERISA's panoptic enforcement provision.").

Taking the foregoing into account, the Court now turns to the instant motion.   As addressed above, this litigation arises from MetLife's payment of optional coverage benefits to Deborah DePalo.   See Prop. Am. Compl., D.E. 18-2 ¶ 28.   MetLife asserts that, after making this payment, it discovered that although it was responsible for the payment of basic coverage benefits, MetLife was not responsible for paying Joseph DePalo's optional coverage benefits.   Id. ¶ 33. Instead, that responsibility had shifted to Aetna.   Id. ¶ 36.   Aetna subsequently paid DePalo the same amount of optional coverage benefits.   Id. ¶ 37.   MetLife asserts that its payment and Aetna's payment are duplicative.   Id. ¶ 39.   Therefore, MetLife initiated this litigation to recover its duplicative payment.   Id. ¶¶ 43-44.

MetLife does not dispute that the Plan is an ERISA plan.   Id. ¶ 10.   In fact, MetLife has brought ERISA claims against Deborah DePalo.   See id. ¶¶ 49-64.   MetLife now seeks to add two state law causes of action against her: (1) conversion; and (2) mistake of fact.   See id. ¶¶ 65-73.   For MetLife to recover under either theory, the Court must determine that MetLife was not required to pay the Joseph DePalo's optional coverage benefits.   MetLife claims that the Court can reach this conclusion without examining the Plan's terms, and instead rest its analysis on "the positions taken by Bank of America and its record keeper, Aetna and MetLife, and the lack of rationale as to why disabled employees would receive twice the benefits afforded to other employee [sic] of Merrill Lynch or Bank of America[,]" see Pl. Reply Br., D.E. 23, at 12-13. The Court disagrees.   As MetLife recognizes in its Complaint, Deborah DePalo has taken the position that these payments are not duplicative and that she is entitled to optional coverage payments from

18

both Merrill Lynch and Bank of America.   Prop. Am. Compl., D.E. 18-2, ¶ 31.

No matter how MetLife frames its arguments, both of MetLife's proposed state law claims are premised upon and require a finding that MetLife was not required, under the Plan's terms, to make the optional coverage benefit payment.   See id. ¶ 67 (asserting the $165,033.90 is MetLife's property), ¶¶ 71, 72 (claiming that the $165,033.90 payment was "erroneous" and "mistakenly paid").   Making such a determination will require a careful analysis of the Plan's terms.[6] Although a state law claim that only "requires a cursory examination of plan provisions[,]" or arises in the context of an ERISA plan, may not be preempted by Section 514(a), the proposed state law claims in this case clearly arise from an ERISA plan, direct the Court's inquiry to the Plan, require an analysis of the Plan's terms, and involve the calculation and payment of benefits due to a Plan participant.   Therefore, MetLife's proposed state law claims are preempted by Section 514(a).   See Marinari, 2009 WL 5171862, at *7 ("A state law cause of action is expressly preempted by ERISA where a party, in order to prevail, must prove the existence of, or specific terms of, an ERISA plan."); Barrington, 2010 WL 3385531, at *2 (claims preempted because the court would need to "consult[] the terms of the Plan itself"); Stokley, 618 F. Supp. 2d at 553; Sheakalee, 2008 U.S. Dist. LEXIS 82553, at *6-7; Autonation, 423 F. Supp. 2d at 1270; Express Oil Change, 933 F. Supp. 2d at 1336 -37; Solberg, 2010 WL 582347, at *3; see also Kollman, 487 F.3d at 149-50; Our Lady of Lourdes, 2009 U.S. Dist. LEXIS 111875, at *11-12; Transitions Recovery, 2011 WL 2413173, at *9; East Brunswick Surgery, 623 F. Supp. 2d at 578; Premier Health, 292 F.R.D. at 223; cf. Whitworth Bros., 794 F.2d at 234.

MetLife argues that the Court should allow the state-law claims to proceed because it

---

[6] The Court notes that MetLife, in support of its claim that it was not responsible for making the payment, relies on a provision of the SPD, which provides "[optional] insurance provided under this section will end at the earliest of: . . . 9. the date the Group Policy ends." Prop. Am. Compl., D.E. 18-2 ¶ 21.

might be left without the ability to bring additional non-ERISA claims against Deborah DePalo. The Court understands MetLife's difficult position.   But that potential outcome does not empower the Court to disregard Section 514(a)'s text, Congress's intent, binding precedent interpreting Section 514(a), and other persuasive opinions, which all direct the Court to deny MetLife's motion on the basis of preemption.   There is no such exception in the preemption provisions of ERISA.   Although it is true that the court in Transitions Recovery expressed concern that dismissing state-law fraud claims would leave the plaintiff without any relief, that court concluded the claims at issue in that case did not "relate to" an ERISA claim and, therefore, the language MetLife cites is mere dicta.   2011 WL 2413173, at *9.   Furthermore, the Rowello Court considered a nearly identical argument regarding the plaintiff's lack of remedy, but still dismissed the plaintiff's state-law claims.   2013 U.S. Dist. LEXIS 152631, at *17.   "While the Court sympathizes with Plaintiff's position, the Court must adhere to the rule that 'the availability of a federal remedy is not a prerequisite for federal preemption.'"   Id. (quoting Bernatowicz v. Colgate-Palmolive Co., 785 F. Supp. 488, 494 (D.N.J. 1992)); see also ING Invs. Plan Servs., LLC v. Solberg, No. 09-1517, 2010 WL 582347, at *3 (D. Colo. Feb. 16, 2010) ("If ERISA preempts state remedies in this case, and [the administrator] does not have standing under ERISA, then this would mean that [the administrator] could not pursue the claims, not that ERISA does not apply.").

　　　　Because the Court concludes that MetLife's state law claims are preempted, the Court need not decide whether MetLife has otherwise stated a valid cause of action under New Jersey law.

**IV.**    **CONCLUSION**

For the reasons reasons set forth above, MetLife's motion to amend is denied.   An appropriate form of Order accompanies this Opinion.


                                                          */s Michael A. Hammer*_____
                                                          **United States Magistrate Judge**


Dated: September 22, 2014